UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
J. FREDERICK MOTZ
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
(410) 962-2698 FAX

July 7, 2006

Memo to Counsel Re: MDL-15863, Putnam Subtrack
*Saunders v. Putnam Am. Gov't Income Fund, et al.*,
Civil No. JFM-04-560

Dear Counsel:

I have reviewed the memoranda submitted in connection with the various defendants' motions to dismiss as well as plaintiff's motion for reconsideration or, in the alternative, leave to amend its complaint. In ruling on the motions, my preference, of course, would be to write a formal opinion. However, my schedule simply does not permit me to do so. Therefore, because it is necessary for me to resolve the pending motions in order to keep these MDL proceedings on track, I am merely issuing this short letter encapsulating my rulings.

I.   CLAIMS UNDER SECTION 10(b) OF THE EXCHANGE ACT

   A.   Employee Timing Defendants[1]

The allegations in both the first amended complaint ("FAC") and the proposed second amendment complaint ("PSAC") establish, at most, that the Employee Timing Defendants made several trades of Putnam funds in an effort to take advantage of stale prices *i.e.*, that they market timed. (*See e.g.*, PSAC ¶¶ 111-25). Critically absent, however, are allegations that the defendants committed any manipulative or deceptive acts of the kind I found actionable in the *Janus*

---

[1] These defendants are Omid Kamshad, Geirluv Lode, Carmel Peters, Justin Scott, James Prusko, and Frank Perfetuo.

1

opinions. For instance, plaintiff does not allege that the defendants made late trades, or that Putnam granted the defendants special permission to engage in active short-term trading. Indeed, both complaints allege that Putnam attempted to *stop* at least some of the defendants from making such trades. (*See* PSAC ¶¶ 113-14, 117). Thus, because "[m]arket timing . . . is not illegal *per se*," *In re Mutual Funds Invest. Litig.*, 384 F. Supp. 2d 845, 856 (D. Md. 2005), the 10(b) claims against the defendants, which are premised on a scheme liability theory, must be dismissed.

In an unsuccessful effort to evade this outcome, plaintiff alleges for the first time in its reply memorandum that the defendants engaged in insider trading. In doing so, it points to a single paragraph in the PSAC which states, in part, "Lode and Peters, like Scott and Kamshad, traded in funds over which they had investment decision-making responsibility and access to non-public information regarding, among other things, current portfolio holdings, valuations and transactions not readily available to all fund shareholders." (PSAC ¶ 119.) But the two 10(b) counts included in the PSAC do not mention insider trading, instead focusing solely on scheme liability deriving from the alleged public dissemination of false information. And even if plaintiff actually had intended to bring such a claim, it would still have to be dismissed because the complaint suffers from two fatal flaws. First, the only allegation of damage plaintiff asserts is that it paid "distorted prices" for Putnam funds. (*See id*. ¶¶ 152, 163). This is precisely the type of damage allegation the Supreme Court found to be insufficient in *Dura Pharmaceuticals, Inc. v. Broudo*, 54 U.S. 336 (2005). Second, the putative class is not restricted to persons who made trades contemporaneously with the defendants. (PSAC ¶ 1).

B. <u>Ian C. Ferguson and Lawrence J. Lasser</u>

Neither the FAC or the PSAC includes a single allegation that Ferguson or Lasser participated in any manipulative or deceptive act in furtherance of the alleged market timing and late trading scheme. Rather, plaintiff alleges only that Ferguson and Lasser were *aware* of the alleged market timing conducted by the Employee Timing Defendants. (*See e.g.*, *id*. ¶¶ 123(b)-(c)). That is insufficient to state a 10(b) claim, and thus the claims against them are dismissed.[2]

C. <u>William H. Woolverton</u>

The allegations against defendant Woolverton are that he, like the Employee Timing Defendants, engaged in market timing of Putnam funds, and that he was aware that the Employee Timing Defendants were doing the same. (*See e.g.*, *id*. ¶ 23). Accordingly, for the reasons stated above, the 10(b) claims against Woolverton are dismissed.

II   <u>CLAIMS UNDER SECTION 20(a) OF THE EXCHANGE ACT</u>

A. <u>A.J.C. Smith and George Putnam, III</u>

Defendants Smith and Putnam are alleged only to have been in control positions over certain Putnam funds. Thus, the claims against them are dismissed for the same reason that I dismissed the 20(a) claims against the Putnam Independent Trustees.

B. <u>Marsh & McLennan Companies, Inc., Lawrence J. Lasser, Gordon H. Silver, Irene M. Esteves, Robert F. Lucey, and Stephen M. Oristaglio</u>

---

[2] In its opposition memorandum, plaintiff attempts to avoid dismissal of the 10(b) claim against Lasser by stating that he signed prospectuses that failed to disclose that market timing was occurring. But this allegation appears nowhere in the complaint, and "'[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

As I indicated in the *Janus* investor class opinion, I agree with Judge Blake's holding in *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 408-10 (D. Md. 2004), concerning what facts must be plead for a Section 20(a) claim in order to survive a motion to dismiss. *In re Mut. Fund Inv. Litig.*, 384 F. Supp. 2d 845, 855 n.8. And here I am satisfied that plaintiff has cleared that hurdle with respect to defendants Lasser, Silver, Esteves, Lucey, and Oristaglio due to their senior management positions within Putnam Management and their involvement in the relevant day-to-day operations of the company. However, plaintiff has not sufficiently pled any facts to establish that MMC, the parent company of Putnam Management, likewise exercised such control. Thus, while the motions to dismiss the claims against Lasser, Silver, Esteves, Lucey, and Oristaglio are denied, I am granting the motion to dismiss the claim against MMC.[3]

III.  MOTION FOR RECONSIDERATION OR FOR LEAVE TO AMEND

  A.  Contract Defendants[4]

Unlike the allegations against Bear Stearns and Bank of America in the *Janus* subtrack, the allegations in the FAC and PSAC do not establish that RTE Asset Management, Schield Management Company, Spectrum Financial, Inc., or BTS Asset Management engaged in any manipulative or deceptive acts. Thus, plaintiff's motion for reconsideration is denied, as is its motion to amend so far as it relates to these defendants.

However, the new allegations contained in the proposed second amended complaint do assert that certain of Prudential Securities, Inc.'s employees designed and employed trading

---

[3] For the same reason, I am also dismissing the claim against MMC brought under Section 15 of the Securities Act.

[4] These defendants are: RTE Asset Management, Schield Management Company, Spectrum Financial, Inc., BTS Asset Management, and Prudential Securities, Inc.

practices intended to evade detection by Putnam. (*E.g.*, PSAC ¶¶ 103, 106). And these allegations I do find to be sufficient to state a 10(b) claim.[5] I am therefore granting plaintiff's motion to reconsider to the extent it seeks to reverse my decision to dismiss the claim with prejudice, and I am granting its motion to amend its complaint *as to Prudential only*.

    B.    <u>Motion to Amend</u>

To the extent plaintiff seeks leave to amend its complaint to include new allegations against the defendants against whom I have dismissed claims in this letter, the motion is denied because those proposed amendments would be futile.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order. I ask that the parties submit within two weeks a proposed order reflecting the rulings made herein.

Very truly yours,

/s/
J. Frederick Motz
United States District Judge

---

[5] Contrary to Prudential's assertion, the new allegations are indeed "substantively different" from the allegation contained in the *Janus* complaint that Prudential employed a "shotgun system." That system was not alleged to have hidden trades from Janus, but rather to have allowed Prudential's clients to spread trades across various funds so as to avoid the risk that a single fund would refuse the trades because it had reached capacity for the day. (*See* Janus Compl. ¶ 98).

5